UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEREK JOSEY,

                                                  Plaintiff,

     v.                                                                      9:21-CV-617 (BKS/ATB)

DUSTIN BELL, et al.,

                                                  Defendants.
_____

AARON M. GOLDSMITH, for Plaintiff
STEVE H. NGUYEN, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter was referred to me by Chief United States District Judge Brenda K. Sannes for preparation of a Report and Recommendation. On May 27, 2021, plaintiff filed a pro se complaint against various employees of the New York Department of Corrections and Community Supervision ("DOCCS"), alleging First Amendment, religion-based free exercise and retaliation claims in violation of 42 U.S.C. § 1983. (*See generally* Complaint ("Compl.")) (Dkt. No. 1).

On January 27, 2023, defendants moved for summary judgment on the basis that plaintiff failed to exhaust his administrative remedies. (Dkt. No. 38-2 at 4-8). On February 15, 2023, plaintiff, who was proceeding pro se at the time, filed a letter motion requesting a 30-day extension of time to respond to the defendants' motion for summary judgment (Dkt. No. 40), which this court granted (Dkt. No. 41). On March 20, 2023, plaintiff filed a second request for an extension of time to respond to the defendants' motion, advising the court that he had recently retained counsel. (Dkt. No.

1

42).  The court granted plaintiff's second request for an extension.  (Dkt. No. 43).  On April 21, 2023, attorney Goldsmith filed a notice of appearance on behalf of plaintiff.  (Dkt. No. 44).  At the same time, counsel filed a letter motion requesting another brief extension of time to file a response to the defendants' motion.  (Dkt. No. 45).  An extension was granted on April 25, 2023.  (Dkt. No. 46).

Plaintiff, through his counsel, filed a response in opposition to the defendants' motion for summary judgment on May 5, 2023.  (Dkt. Nos. 47, 48, 49).  This court construed plaintiff's response as a request for additional information responsive to the summary judgment motion pursuant to Fed. R. Civ. P. 56(d).  (Dkt. No. 50).  Based on the plaintiff's request, I deferred consideration of defendant's motion for summary judgment to allow counsel an opportunity to file a supplemental response to the summary judgment motion.  (*Id.*).  Plaintiff's deadline to file a supplemental response expired on June 30, 2023, and no additional submissions have been filed as of the date of this Order and Report-Recommendation.  (*Id.*).  Accordingly, the court considers defendants' motion for summary judgment fully briefed and will proceed to consider the merits of the motion, pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 38).

I.     **Summary Judgement**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a

motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II. Plaintiff's Factual Allegations

At all times relevant to the underlying claims, plaintiff was in DOCCS custody and incarcerated at Clinton Correctional Facility ("Clinton C.F."). In 2018, he was housed in E-Block at Clinton C.F. and worked as a porter. (Compl. at 5). Defendants Correctional Officers ("C.O.") Bell and C.O. Tucker were the officers on duty in E-Block from 3:00 p.m. until 11:00 p.m. (*Id.*). On May 16, 2018, C.O. Bell and Defendant Sergeant ("Sgt.") John Doe refused to allow plaintiff to attend Ramadan services. (*Id.* at 4). From May 16, 2018 until June 5, 2018, C.O. Bell and C.O. Tucker continued to refuse to allow plaintiff to attend Ramadan services, refused to permit plaintiff to "break [his] fast with [his] religious brother," and told plaintiff that he must work or "get keeplock." (*Id.* at 4-5). Additionally, C.O. Bell would "make remark[s]

3

toward[] [plaintiff's] religion" stating that plaintiff's "religious [sic] don't like white people." (Compl. at 4).  Plaintiff claims that he "put Sgt. Doe and Defendant Superintendent Bell ("Supt. Bell") on notice" but "nothing changed." (*Id.*).

## III.  Exhaustion of Administrative Remedies

### A.  Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds*, *Ross v. Blake*, 578 U.S. 632 (2016).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  *Woodford*, 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Incarcerated Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the

IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Incarcerated Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Prior to *Ross v. Blake*, supra, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640 (2016). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639). Although *Ross* has eliminated

5

the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must also consider whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 2016 WL 4572321 at *2.

    B.    **Analysis**

Defendants argue that summary judgment is warranted because plaintiff did not file any grievances or grievance appeals in relation to the underlying incident giving rise to his claims. (Dkt. No. 38-2 at 4-9). In support of their contentions, defendants have submitted sworn declarations from the Incarcerated Grievance Program ("IGP") supervisor Christine Gregory and IGP director Rachael Seguin. (Seguin Decl., Gregory Decl.) (Dkt. Nos. 38-3, 38-4). In her declaration, IGP Supervisor Gregory states that plaintiff completed a shop facility orientation at Clinton C.F. around January 2018. (Gregory Decl. ¶¶ 12-13). The shop facility orientation teaches incarcerated individuals how to file and appeal grievances. (Gregory Decl. ¶ 12). IGP Supervisor Gregory further states there is no record of plaintiff filing a grievance at Clinton Correctional Facility between May 16, 2018 and June 26, 2018. (Gregory Decl. ¶¶ 30-31, 33).

Moreover, IGP Director Seguin states that pursuant to her review of the relevant DOCCS records, "[p]laintiff did not file any grievance appeals to CORC regarding religious issues on or around May 2018." (Seguin Decl. ¶ 23). A copy of the computer print-out listing this information is attached as Exhibit E to the Seguin Declaration. The

6

records show that plaintiff filed one grievance appeal to the CORC regarding religious issues, and this appeal was filed in March 2018.[1]  (Seguin Decl. ¶ 24 & Ex. E).

In response to the moving defendants' application for summary judgment, plaintiff argues that he did file grievances with respect to his underlying claims, but that his ability to participate in the grievance process was "thwart[ed]" by DOCCS.  (Dkt. No. 49 at 6).  Plaintiff specifically states that he filed two grievances relevant to the underlying claims, one on May 24th and the other on June 5th.  (Dkt. No. 38-5, Ex. A). To support his contentions, plaintiff refers to a copy of a July 28, 2018 letter he purportedly sent to the "Grievance Director in Albany C.O.R.C.," in which plaintiff complains that he never received a response from grievances he filed on May 24th and June 5th.  (Dkt. No. 47-1).  The letter suggests that the referenced grievances concerned the same complaint he raises in the instant matter – the defendants' refusal to allow him to attend a religious service.  Moreover, the letter is dated approximately two months after the incident described in the underlying complaint allegedly occurred.  (Id.).

The defendants addressed plaintiff's July 28, 2018 letter in their original motion. According to director Seguin, on August 6, 2018, she received the same handwritten letter from plaintiff stating they he had filed two grievances about being "denied . . . Ramadan" by defendant C.O.s Bell and Tucker, but "never got a reply or grievance number."  (Seguin Decl. ¶¶ 9-11).  Although plaintiff maintains that he kept a copy of all of his grievance complaints, he did not enclose copies of the purported May 24th or June 5th grievances with his letter.  (Id. ¶¶ 12-13).  Upon receiving plaintiff's letter, director Seguin's office contacted supervisor Gregory, who confirmed that "no

---

[1] Plaintiff filed the March 2018 grievance because he was allegedly not allowed to attend a different religious holiday, Saviours' Day.  (Seguin Decl. ¶ 25).

7

complaints regarding Ramadan" were received in 2018. (Seguin Decl. ¶ 14; Gregory Decl. ¶¶ 21-28). Accordingly, director Seguin responded to plaintiff in writing advising him of the same. (Seguin Decl. ¶ 15 & Ex. B). Director Seguin also advised plaintiff that he should address specific grievance inquiries directly to the IGP Supervisor at the facility where the grievance was filed for the most expeditious means of resolution. (*Id.* Ex. B). There is no suggestion that plaintiff took any further action with respect to these grievances.

The Second Circuit addressed the "opaqueness" unavailability exception in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). There, the court held that a grievance program is functionally unavailable in the "extraordinary circumstance[ ]" where a special housing unit inmate hands a corrections officer a grievance but the corrections officer fails to file it. *Id*. at 124. The court explained that "the regulations only contemplate appeals of grievances that were actually filed," rendering it "practically impossible for [the plaintiff] to ascertain whether and how he could pursue his grievance." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* (quoting another source). Therefore, "the regulatory scheme . . . [was] so opaque and so confusing that . . . no reasonable prisoner can make use of it." *Id.* (quoting another source). The Second Circuit concluded that because the grievance procedures were unavailable to the plaintiff, he had satisfied the PLRA's exhaustion requirement.

Since *Williams*, multiple courts in this Circuit have concluded that a grievance procedure may be unavailable where, as here, a grievance was never filed, and the regulatory scheme providing for the appeal was so "opaque" and "confusing" that no reasonable prisoner could use it. *See Hamilton v. Westchester Cty*., No. 18-CV-8361,

8

2020 WL 917214, at *4 (S.D.N.Y. Feb. 25, 2020) (denying motion to dismiss where it appeared from face of the complaint that officer refused to accept grievance); *Jenkins v. Cordero,* No. 17-CV-1592, 2018 WL 456311, at *3 (S.D.N.Y. Jan. 17, 2018) (noting that "the IGP's regulations are not clear regarding how a prisoner is to proceed when a grievance is submitted by the inmate but never filed with the IGRC"); *Ortiz v. Annucci*, No. 17-CV-3620, 2019 WL 1438006, at *8-9 (S.D.N.Y. Mar. 29, 2019) (denying motion for summary judgment where plaintiff maintained that he drafted and attempted to file a grievance but the officer to whom he handed it failed to file it).

In this case, it is unclear whether plaintiff's housing status was similar to, and as restrictive as, that of the plaintiff in *Williams*. According to the complaint, "E-Block" was a "lock down block" that housed inmates in both keeplock and protective custody status. (Compl. at 5). Plaintiff maintains that he lived in E-Block because he was a "general population inmate porter," however the officers working in E-Block prevented plaintiff from going to the yard with the general population, along with preventing plaintiff from attending religious services. (*Id.*). In any event, viewed in a light most favorable to the plaintiff, the record before this court raises the same "inescapable quandary that inmates find themselves in when their grievances are not filed – namely, that current regulations do not guarantee recourse for an inmate whose grievance was never filed." *McRae v. Cordero*, No. 15-CV-4334, 2018 WL 3611964, at *6 (S.D.N.Y. July 26, 2018). In particular, without more information, the court cannot determine at this juncture, as a matter of law, whether the regulations and/or the defendants' response to plaintiff's inquiry regarding the status of his grievances made it possible for him to "ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124.

Accordingly, the evidence before this court raises an issue of fact as to whether plaintiff's failure to exhaust should be excused. *See Hamlet v. Stotler*, No. 9:17-CV-0939 (GLS/TWD), 2018 WL 2729263, at *8 (N.D.N.Y. Apr. 27, 2018) (reasoning that the IGP Supervisor's response to the plaintiff's inquiry that no grievances had been filed, did not render *Williams* inapplicable when it was issued beyond the twenty-one day deadline and forty-five day limit on requesting an extension based upon mitigating circumstances); *Coleman v. Racette*, No. 15-CV-40, 2017 WL 2579084, at *5 (N.D.N.Y. Jan. 17, 2017) ("The court notes, however, that if a grievance is lost or destroyed before it is received by the IGRC and assigned a number, it would be difficult to 'appeal' a grievance 'to the next step.'"), *report and recommendation adopted*, 2017 WL 2589366 (N.D.N.Y. Jun. 14, 2017).

In the alternative to summary judgment, defendants have requested "an evidentiary hearing to determine whether plaintiff properly exhausted his administrative remedies." (Defs.' MOL at 9) (Dkt. No. 38-2). In *Messa v. Goord*, the Second Circuit held that factual disputes regarding exhaustion under the PLRA need not be decided by a jury and may properly be decided by the court following an evidentiary hearing. 652 F.3d 305 (2d Cir. 2011). Here, should the district court accept my recommendation to deny defendants' motion for summary judgment, considering the unresponsiveness of plaintiff's counsel and the various conflicting representations made as to the status of pretrial discovery, it may be appropriate to delay an evidentiary hearing until this court has the opportunity to confer with the parties as to the status of this litigation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 38) be **DENIED,** and it is

**RECOMMENDED**, that if the district judge adopts this report-recommendation, the case be referred back to me to determine the status of pretrial discovery and the scheduling of an exhaustion hearing, if deemed warranted, and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on the parties in accordance with the local rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 26, 2023

*[signature: Andrew T. Baxter]*
Andrew T. Baxter
U.S. Magistrate Judge